DANIEL W. DAIL ET UX. *v.* TRI-CITY
TRUCKING COMPANY ET AL.

[No. 450, September Term, 1977.]

*Decided June 7, 1978.*

The cause was argued before THOMPSON, DAVIDSON and
MOORE, JJ.

*Richard T. Rombro,* with whom were *Wartzman, Rombro,
Rudd & Omansky, P.A.* on the brief, for appellants.

*Samuel S. Smalkin,* with whom was *William K. Connor* on
the brief, for appellee Tri-City Trucking Company. *M. Natalie*

*McSherry,* with whom were *William B. Whiteford* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for other appellee.

DAVIDSON, J., delivered the opinion of the Court.

In the Circuit Court for Harford County, appellants Daniel W. Dail (Dail) and Hannah Dail, his wife, sued appellees Tri-State Motor Transit [1] (Tri-State) and Wright Contracting Company (Contractor). The Dails claim damages for injuries sustained on 8 April 1974 when the pickup truck Dail was driving was struck by a tractor-trailer owned by Tri-State and driven by George E. Lewis.[2]

The accident occurred in the intersection of Joppa Road and U.S. Route 40. At this location, Joppa Road was a two-lane highway running north and south. Ordinarily, U.S. Route 40, running east and west, was a four-lane highway with two eastbound lanes separated from two westbound lanes by a grass median strip. Stop signs on Joppa Road controlled the intersection.

At the time of the accident, the Contractor was repairing and resurfacing U.S. Route 40. The two westbound lanes had been closed to through traffic. One eastbound lane was being used for eastbound traffic while the other was being used for westbound traffic. There is conflicting evidence as to whether there were signs, warning signals, barricades or other devices to indicate that the westbound lanes were closed and that the eastbound lanes were being used for both eastbound and westbound traffic.

At the time of the accident, Dail was driving his pickup truck south on Joppa Road. It was dusk and a heavy rain was falling. When he reached the stop sign, he came to a complete stop and looked to his left for westbound traffic. Seeing none, he proceeded to the median strip, where he again stopped. He

---

1. In the declaration this defendant was named as Tri-City Trucking Company. In its general issue plea, Tri-State noted the mistake. Although the declaration was not amended, later entries in the file were captioned correctly.

2. Although Lewis was named as a defendant in Dail's declaration, he was never served. No appearance or pleading was filed for him. Under these circumstances, Md. Rule 605 a is inapplicable because Lewis was never a party.

looked to his right for eastbound traffic and saw none. Because he "wasn't expecting traffic from the east," he did not look to his left for westbound traffic. As he moved forward, his pickup truck was struck by Tri-State's tractor-trailer, which was traveling west in a lane ordinarily used by eastbound traffic. He was seriously injured.

The Contractor and Tri-State filed motions for summary judgment. On 28 March 1977, Judge Edward D. Higinbothom, assuming that the disputed facts were not material because the boulevard rule applied, found that Dail was contributorily negligent as a matter of law. He granted summary judgment in favor of the Contractor and Tri-State. Judgment absolute was entered on 1 April 1977. This appeal followed.

The boulevard rule establishes that a driver who enters a through highway at an intersection controlled by a stop sign (unfavored driver) must stop and yield the right of way to all drivers of vehicles proceeding in a lawful manner on the through highway (favored drivers).[3] If the unfavored driver fails to yield the right of way, and an accident results, the unfavored driver is contributorily negligent as a matter of law. Because the unfavored driver's negligence is a contributing cause of the accident, he cannot recover against the favored driver unless the doctrine of last clear chance applies.[4]

Dail initially contends that he is not barred from recovery against Tri-State. He maintains that he is not contributorily negligent as a matter of law because the boulevard rule is inapplicable. He relies upon *Covington v. Gernert,*[5] which held that that rule does not apply if a "favored" driver is not proceeding in a lawful manner.

---

3. Covington v. Gernert, 280 Md. 322, 324-25, 373 A. 2d 624, 625 (1977); Dean v. Redmiles, 280 Md. 137, 143-44, 374 A. 2d 329, 333-34 (1977); Gazvoda v. McCaslin, 36 Md. App. 604, 607-12, 375 A. 2d 570, 573-75 (1977); Md. Code Ann., art. 66½, §§ 1-175 & 11-403 (1970 Repl. Vol.), now codified as Md. Transp. Code Ann., §§ 21-101 (o) & 21-403 (1977); Note, *The Maryland Boulevard Rule: A Time for Change,* 6 U. of Baltimore L. Rev., 223, 224, 239 (1977); *Survey of Maryland Court of Appeals Decisions 1975-1976, Torts, Developments in the Boulevard Rule,* 37 Md. L. Rev. 61, 171, 173 '(1977) [hereinafter cited as *Developments in the Boulevard Rule*].

4. Dean v. Redmiles, 280 Md. at 147, 374 A. 2d at 335; Greenfeld v. Hook, 177 Md. 116, 134, 8 A. 2d 888, 896 (1939); Gazvoda v. McCaslin, 36 Md. App. at 608, 375 A. 2d at 573.

5. 280 Md. 322, 373 A. 2d 624 (1977).

While Dail's declaration alleged that Tri-State, the "favored" driver, was proceeding in the wrong direction and at an excessive speed, there was no evidence, either in his answer to the motions for summary judgment, or in supporting depositions, to show that the "favored" driver was proceeding in an unlawful manner. Accordingly, he does not here contend that the boulevard rule is inapplicable because the "favored" driver was not proceeding in a lawful manner, but rather claims that the Contractor's negligence in failing to warn of changed traffic patterns "render[ed] unlawful those vehicles traveling in the wrong direction." This contention is without merit. Accordingly, we shall affirm the judgment in favor of Tri-State.

Dail further contends that he is not barred from recovery against the Contractor. He asserts that the boulevard rule is inapplicable and that therefore he is not contributorily negligent as a matter of law.

Here there was no genuine dispute as to the fact that an unfavored driver (Dail) directly interfered with a favored driver's (Tri-State) right of way, thereby disrupting the flow of traffic on a through highway. The facts, viewed most favorably to Dail, show that the Contractor failed to post warning signs. They also support an inference that, but for that omission, Dail would have looked for and seen the approaching tractor-trailer. Under these circumstances, if the boulevard rule were inapplicable, Dail would not be contributorily negligent as a matter of law and possibly could recover from the Contractor.[6] Thus, this case presents the novel question of whether the boulevard rule applies to bar recovery by an "unfavored" driver against a party other than the "favored" driver when that party's negligence may have been a proximate cause of the "unfavored" driver's failure to yield the right of way.

The Court of Appeals has applied the boulevard rule only in suits between favored drivers, unfavored drivers, and their

6. Rea Constr. Co. v. Robey, 204 Md. 94, 99-100, 102 A. 2d 745, 747 (1954); see East Coast Freight Lines v. Mayor of Baltimore, 190 Md. 256, 278-79, 58 A. 2d 290, 300-01 (1948); State ex rel. Biggs v. Mayor of Baltimore, 129 Md. 686, 690-91, 99 A. 860, 862 (1917); Baltimore County v. Stitzel, 26 Md. App. 175, 177, 182, 337 A. 2d 721, 723, 725-26, cert. denied, 275 Md. 745 (1975).

passengers.[7] In these cases, that Court has "jealously guarded and upheld the favored driver's right of way on the favored boulevard," [8] in order to discourage interference with the flow of traffic. Nevertheless, that Court has declined to apply the boulevard rule in certain cases in which there was a direct interference with the favored driver's right of way and the flow of traffic on a through highway,[9] as well as in cases in which there was no such interference.[10] The Court of Appeals has never applied that rule in a suit between an unfavored driver and a party other than a favored driver or passenger. We decline to do so here.

The Court of Appeals has repeatedly stated the purpose of the "exacting" and seemingly "harsh" boulevard rule.[11] In *Belle Isle Cab Co. v. Pruitt*,[12] that Court said:

"The obvious and essential purpose of such rules is to accelerate the flow of traffic over through highways by permitting travellers thereon to proceed within lawful speed limits without interruption. That purpose would be completely frustrated if such travellers were required to slow down at every intersecting highway, and the vast sums which have been spent in their construction in an effort to accommodate the great volume of automobile traffic which is so indispensable a part of modern life, would

7. Dean v. Redmiles, 280 Md. at 144, 374 A. 2d at 334. The Court identified eight categories: 1) favored driver v. unfavored driver; 2) unfavored driver v. favored driver; 3) passenger of unfavored driver v. favored driver; 4) passenger of unfavored driver v. both drivers; 5) passenger of favored driver v. both drivers; 6) passenger of favored driver v. unfavored driver; 7) passenger of favored driver v. favored driver; and 8) counter-claims, favored driver and unfavored driver suing each other.

8. Creaser v. Owens, 267 Md. 238, 243, 297 A. 2d 235, 238 (1972).

9. Boulevard rule does not apply to pedestrians, Folck v. Anthony, 228 Md. 73, 76, 178 A. 2d 413, 414-15 (1962), or vehicles leaving the highway, Palmer v. Scheid, 223 Md. 613, 616-17, 166 A. 2d 244, 246 (1960) (vehicle making U-turn); Safeway Trails, Inc. v. Smith, 222 Md. 206, 211-12, 159 A. 2d 823, 826 (1960) (vehicle making left turn).

10. Boulevard rule does not apply to vehicle which, having entered through highway, is already in flow of traffic. Grue v. Collins, 237 Md. 150, 157, 205 A. 2d 260, 263-64 (1964).

11. Creaser v. Owens, 267 Md. at 246, 297 A. 2d at 239.

12. 187 Md. 174, 179, 49 A. 2d 537, 539 (1946); *see* Covington v. Gernert, 280 Md. at 324, 373 A. 2d at 625; Dean v. Redmiles, 280 Md. at 147, 374 A. 2d at 335; Gazvoda v. McCaslin, 36 Md. App. at 608, 375 A. 2d at 573.

be largely wasted. On the other hand the safety of the travelling public demands that the rules defining the relative rights of travellers on through highways and on highways intersecting them be clear, unmistakable and definite. If the duty of stopping and of yielding right of way, is positive and inflexible, the inhibited traveller may know that he violates it at his risk, while the traveller on the favored highway may know that he may safely exercise the privilege of uninterrupted travel thereon which the statute gives. If, however, the relative rights of travellers on the two types of highway are held to depend upon nice calculations of speed, time and distance the rule would encourage recklessness and the privilege of uninterrupted travel would mean little more than the privilege of having a jury guess in the event of a collision whose guess was wrong."

The boulevard rule's purpose of facilitating the flow of traffic is fully effectuated if uninterrupted travel is encouraged by protecting the favored driver's right of way and recklessness is discouraged by penalizing the unfavored driver for failure to yield the right of way. The favored driver is protected by "virtual immunity against actions brought by the unfavored driver." [13] The unfavored driver is penalized by being found contributorily negligent as a matter of law.

The rule's purpose would not be significantly advanced by barring an unfavored driver from recovery against a negligent party other than the favored driver. Indeed, it would be antithetical to the rule's purpose to immunize such a negligent party from liability when that party's actions caused the disruption of the flow of traffic on a through highway by causing the unfavored driver's failure to yield the right of way. In addition, it would be unfair to immunize that negligent party under such circumstances by applying the boulevard rule.

We decline to apply the boulevard rule here because it

---

13. *Developments in the Boulevard Rule,* 37 Md. L. Rev. at 173.

would not serve that rule's purpose and would be unfair. We shall not immunize the Contractor from liability by holding Dail contributorily negligent as a matter of law where, but for the Contractor's alleged negligence in failing to post warning signs, Dail may not have failed to look for and see the approaching tractor-trailer. Accordingly, we shall reverse the judgment in favor of the Contractor and remand the case for further proceedings in accordance with this opinion.

> *Judgment as to Tri-City Trucking Company affirmed.*
>
> *Judgment as to Wright Contracting Company reversed.*
>
> *Case remanded for further proceedings consistent with this opinion.*
>
> *Costs to be equally divided between Daniel W. Dail and Wright Contracting Company.*